IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| DR. KATHY DYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THOMAS MORE UNIVERSITY, INC. | ) | COMPLAINT WITH |
| 333 Thomas More Parkway | ) | JURY DEMAND |
| Crestview Hills, Kentucky 41017 | ) | |
| Defendant. | ) | |
| | ) | |
| Serve Agent: | ) | |
| Joseph L. Chillo, LP.D., President | ) | |
| Thomas More University, Inc. | ) | |
| Saints Center | ) | |
| 333 Thomas More Parkway | ) | |
| Crestview Hills, Kentucky 41017 | ) | |

## COMPLAINT

Plaintiff Kathy Dye, by her attorneys, for her Complaint against Defendant Thomas More University, states as follows:

### Introduction

1.    Plaintiff, Dr. Kathy Dye, was a long-time, tenured full Professor at Defendant Thomas More College, now referred to as Thomas More University, Inc. (the "University"). Dr. Dye garnered consistently strong student evaluations, demonstrated a "broad scholarly knowledge" of her field, and was recognized by her Department Chair as a leader at the University and in the community. When she developed a disability and requested an accommodation that had been recommended by two physicians who evaluated her at the University's insistence,

{00117341 }

the University refused to cooperate and eventually fired her for failing to participate in the very activities for which she sought accommodation.

## Jurisdiction and Venue

2. This Court has jurisdiction over Dr. Dye's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 12117 (Americans With Disabilities Act).

3. This Court has supplemental jurisdiction over Dr. Dye's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

## Parties

5. Dr. Dye is an individual residing in Crestview Hills, Kentucky. At all relevant times, Dr. Dye was an employee of the University.

6. Dr. Dye has met all administrative prerequisites to the filing of this lawsuit under the Americans With Disabilities Act ("ADA"). On June 16, 2017, she filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). She has filed this lawsuit within 90 days of her receipt of her right to sue from the EEOC, which was dated April 11, 2019.

7. The University, formerly known as Thomas More College, is a private, not-for-profit university located in Crestview Hills, Kentucky. It is the Catholic Liberal Arts University of the Diocese of Covington, Kentucky. At all relevant

times, the University was an employer within the meaning of the ADA, 42 U.S.C. § 12111(5)(A), and the Kentucky Civil Rights Act, Ky. Rev. Stat. 344.030(2).

## Factual Allegations

**Dr. Dye Was Diagnosed With A Disability And The University Refused To Accommodate It.**

8. In or around September 2015, Dr. Dye was diagnosed with situational anxiety.

9. Dr. Dye sought a temporary accommodation for her situational anxiety from the University. Specifically, she sought accommodations surrounding interactions with her department chair and attendance at department meetings. The University did not engage in any discussion of accommodations for Dr. Dye.

10. The University required Dr. Dye to submit to an independent medical examination.

11. Dr. Dye agreed to the examination by physicians selected by the University.

12. On March 1, 2016, Dr. Tom Davis of St. Elizabeth Physicians in Englewood, Kentucky provided his Psychological Evaluation for Work Accommodations. He concluded: (1) "Dr. Dye is experiencing active psychological and psychiatric symptoms that are directly and causally related to her job;" (2) "Dr. Dye has developed a phobic avoidance of interacting with the chair of her department;" (3) Dr. Dye's "symptoms do and would interfere" with her ability to perform her job duties adequately; and (4) "an accommodation of the patient's anxiety and depression is in the best interest of both the employee and employer."

13. Dr. Davis recommended as accommodations: (1) allowing Dr. Dye to be absent from departmental meetings at her discretion for the next six months; and (2) mediated meetings between Dr. Dye and her department chair.

14. On March 4, 2016, Dr. Evan Davies, of St. Elizabeth Healthcare, Business Health Services, confirmed Dr. Davis's recommendations for accommodations. Dr. Davies noted that during the period of accommodation, Dr. Dye would obtain an initial mental health evaluation at the Therapeutic Collaborative and follow up with a recommended treatment plan.

15. On or about April 8, 2016, Dr. Dye provided a letter to the University from Dr. Jeff Blau of St. Elizabeth Physicians of Fort Mitchell, Kentucky, which stated that he had seen Dr. Dye in his office on April 6, 2016 for anxiety and panic attacks. He advised that she could perform all her job duties except interacting with the department chair and attending department meetings.

16. The University did not respond to Dr. Dye after she provided Dr. Blau's letter.

17. On or about May 3, 2016, Dr. Dye provided a letter to the University from Kathy Voorhees, Licensed Clinical Social Worker with Therapeutic Collaborative in Wilder, Kentucky, which advised that Dr. Dye had been attending therapy services at Therapeutic Collaborative and that, "It is my clinical recommendation that Kathy not participate in this year's commencement exercises, due to mental health concerns for which [sic] she is addressing in therapy."

18. The University did not respond to Dr. Dye after she provided Kathy Voorhees's letter.

19. Despite its knowledge that meetings with her department chair caused severe anxiety for Dr. Dye, and despite the recommendations of its selected physicians, on May 10, 2016, the University required Dr. Dye to attend a meeting with her department chair, the Dean, and the Human Resources Director. The meeting was not mediated, as had been recommended and requested.

20. At that meeting, the University refused to allow Dr. Dye to attend department meetings at her discretion, as recommended by the University's selected physicians. Instead, the University required Dr. Dye to participate in department meetings by telephone.

21. On or about May 13, 2016, Dr. Dye provided the University a letter from Dr. Neel Desai of St. Elizabeth Physicians in Fort Mitchell, Kentucky, which advised, "It is my medical opinion that Kathy Dye may not attend commencement activities or any activities related to commencement activities."

22. The University did not respond to Dr. Dye after she provided Dr. Desai's letter. On her doctor's orders, Dr. Dye did not attend commencement.

23. The University did not schedule the mediated meeting between Dr. Dye and her department chair until August 12, 2016, even though the University's selected physicians had recommended in March 2016 that such a meeting take place.

24. Just prior to the mediated meeting with her department chair, Dr. Dye provided a letter to then-Dean of Thomas More College, Kathleen Jagger, from Mariana Belvedere, Licensed Clinical Psychologist. Dr. Belvedere advised Dean Jagger that Dr. Dye was participating in psychological treatment with her. She also recommended that, because Dr. Dye continued to experience the symptoms identified in Dr. Davis's letter of March 1, Dr. Dye be excused from attending Assembly activities scheduled for August 11, 2016.

25. Dean Jagger did not respond to Dr. Dye after she provided Dr. Belvedere's letter. On her psychologist's recommendation, Dr. Dye did not attend Assembly activities, or any other University activities, on August 11, 2016.

26. On August 12, 2016, Dr. Dye participated in a meeting with her department chair mediated by Candace Aulick. The meeting was cut short because the room the University had designated for the meeting was scheduled for another group before the mediated meeting could be concluded.

27. On August 21, 2016, Ms. Aulick provided Dr. Dye a summary of the mediated meeting. Dr. Dye did not sign the summary. The department chair did not sign the summary until August 31, 2016.

**The University Terminated Dr. Dye For Not Participating In The Very Activities For Which She Sought Accommodation, Despite The Faculty Hearing Committee's Unanimous Decision That Dr. Dye Should Not Be Terminated.**

28. On August 22, 2016, Dean Jagger sent a letter to Dr. Dye advising that it was the University's position that Dr. Dye had refused to perform her contractual

duties and that she was referring the matter to the President of the University, Dr. David Armstrong.

29.     On August 24, 2016 and again on September 2, 2016, Dr. Armstrong advised Dr. Dye that he was recommending the termination of her employment because: (1) she did not attend graduation on May 14, 2016; (2) she did not attend Assembly and a department meeting on August 11, 2016; and (3) she did not attend Convocation on August 13, 2016. Dr. Armstrong noted in his September 2, 2016 letter that Dr. Dye had requested accommodations not to attend these events but took the position that "the [University] is not obligated to grant these requests."

30.     A faculty Hearing Committee was convened to review Dr. Armstrong's recommendation. On November 14, 2016, the Hearing Committee advised that it had voted unanimously in opposition to the President's recommendation of termination.

31.     On January 17, 2017, a review panel of the Board of Trustees of the University ratified Dr. Armstrong's recommendation.

32.     On January 23, 2017, the faculty Hearing Committee again concluded Dr. Dye should not be terminated and also concluded that the University had failed to follow the Dismissal Procedures set forth in the *Faculty Policy* Manual.

33.     Despite the conclusions of the faculty Hearing Committee, the University's Board of Trustees review panel concluded on January 24, 2017, that the facts warranted Dr. Dye's termination.  The University then terminated Dr. Dye.

34. Upon reason and belief, Defendant University replaced Plaintiff with a non-disabled person in teaching Plaintiff's capstone courses and/or for her teaching assignments in general.

## COUNT I
## Violation of the Americans With Disabilities Act
## Failure to Accommodate

35. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

36. At all relevant times, Plaintiff had a mental impairment that substantially limited the major life activities of, among other things, learning, concentrating, thinking, communicating, and working.

37. At all relevant times, Plaintiff could perform the essential functions of her job, with or without reasonable accommodation.

38. The University was aware of Plaintiff's disability.

39. Plaintiff sought reasonable accommodations from the University for her disability.

40. Through the actions described above, the University refused to engage in a good faith, interactive process to determine whether a reasonable accommodation was available.

41. Through the actions described above, the University discriminated against Plaintiff on the basis of her disability by failing to make reasonable accommodations for her disability, in violation of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

42. The University acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA in its failure to accommodate Plaintiff's disability.

43. As a direct and proximate result of the University's failure to accommodate Plaintiff's disability, Plaintiff suffered injuries including but not limited to emotional distress, including physical illness associated with such distress.

## COUNT II
### Violation of the Americans With Disabilities Act
### Termination

44. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

45. Through the actions described above, the University terminated Plaintiff on the basis of her disability, in violation of 42 U.S.C. § 12112(a).

46. The University acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA by terminating Plaintiff's employment on the basis of her disability.

47. Upon reason and belief, Plaintiff was replaced by a non-disabled person.

48. As a direct and proximate result of the University's disability discrimination, Plaintiff suffered injuries including but not limited to damage to her reputation, loss of income, and emotional distress, including physical illness associated with such distress.

## COUNT III
### Violation of the Kentucky Civil Rights Act
### <u>Failure to Accomodate</u>

49. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

50. At all relevant times, Plaintiff had a mental impairment that substantially limited the major life activities of, among other things, learning, concentrating, thinking, communicating, and working.

51. At all relevant times, Plaintiff could perform the essential functions of her job, with or without reasonable accommodation.

52. Defendant University was aware of Plaintiff's disability.

53. Plaintiff sought reasonable accommodations from Defendant University for her disability

54. Through the actions described above, the University refused to engage in a good faith, interactive process to determine whether a reasonable accommodation was available.

55. Through the actions described above, the University discriminated against Plaintiff on the basis of her disability by failing to make reasonable accommodations for her disability, in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. 344.010 et seq.

56. The University acted with malice or reckless indifference to Plaintiff's state protected rights under the Kentucky Civil Rights Act in its failure to accommodate Plaintiff's disability.

57. As a direct and proximate result of the University's failure to accommodate Plaintiff's disability, Plaintiff suffered injuries including but not limited to emotional distress, including physical illness associated with such distress.

## COUNT IV
### Violation of the Kentucky Civil Rights Act
### Termination

58. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

59. Through the actions described above, the University terminated Plaintiff on the basis of her disability, in violation of Ky. Rev. Stat. 344.040(1)(a).

60. Upon reason and belief, Plaintiff was replaced by a non-disabled person.

61. As a direct and proximate result of the University's disability discrimination, Plaintiff suffered injuries including but not limited to damage to her reputation, loss of income, and emotional distress, including physical illness associated with such distress.

## COUNT V
### Breach of Contract

62. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

63. At all relevant times, Dr. Dye had an employment contract with the University.

64. The employment contract required the University to follow the policies on Faculty Tenure and Dismissal should it seek to terminate Dr. Dye's employment contract.

65. The University breached the contract by failing to follow the dismissal procedures set forth in Section 1650 of the *Faculty Policy* Manual when it terminated Dr. Dye's employment.

66. As a direct and proximate result of the University's breach of contract, Plaintiff suffered injuries including but not limited to loss of income.

## Prayer For Relief

WHEREFORE, Plaintiff prays for relief as follows:

A. Order the University to reinstate Plaintiff to her position as a tenured faculty member;

B. Award Plaintiff backpay, compensatory damages, and other make-whole and equitable relief;

C. Award Plaintiff punitive damages to the extent allowed by law;

D. Award Plaintiff her reasonable attorneys' fees, costs, and expenses, including expert witness fees, as provided for in 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, and Ky. Rev. Stat. 344.450;

E. Award Plaintiff pre-judgment and post-judgment interest; and

F. Order all other appropriate relief as the interests of justice may require.

**Jury Demand**

Plaintiff demands trial by jury on all claims and issues that may be tried to a jury.

**KATHY DYE**

By: /s/ Theresa M. Mohan
    One of her attorneys

Theresa M. Mohan (KBA 88734)
WALLACE BOGGS, PLLC
300 Buttermilk Pike, Suite 100
Fort Mitchell, Kentucky 41017
(859) 578-5410 Telephone
(859) 331-5337 Fax
tmohan@wallaceboggs.com


Cynthia H. Hyndman
Laura R. Feldman
ROBINSON CURLEY P.C.
300 S. Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 Phone
(312) 663-0303 Fax
chyndman@robinsoncurley.com
lfeldman@robinsoncurley.com